Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 4894 | DATE | SEP 3 - 2002 |
| CASE TITLE | Ebenezer Dikeocha vs. United States of America | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, the petitioner's motion is denied. [Doc. # 1].

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 5 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 15 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| vg(lc) | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Ebenezer Dikeocha,, <br><br> Petitioner, <br><br> v. <br><br> United States of America <br><br> Respondent | ) <br> ) <br> ) <br> )    SEP 5 2002 <br> )    No. 01 C 4894 <br> ) <br> )    HONORABLE DAVID H. COAR <br> ) <br> ) <br> ) |

## **MEMORANDUM OPINION AND ORDER**

Before this court is petitioner's, Ebenezer Dikeocha ("Dikeocha"), writ of habeas corpus pursuant to 28 U.S.C. § 2255. The petitioner's motion is denied.

### Background

On October 10, 1990, Ebenezer Dikeocha and three other individuals -- Charles Emenogha, Vincent Nwafor and Gibson Nwafor, were charged in a superseding indictment with conspiracy to distribute heroin and numerous substantive counts of heroin distribution. Dikeocha was charged in the superseding indictment with one count of conspiracy (Count One) and two substantive counts of heroin distribution (Count 6 and 7). Defendants Emenogha, Vincent Nwafor and Gibson Nwafor were convicted after a jury trial in 1991 before the Hon. James F. Holderman. The Seventh Circuit affirmed their convictions in a published decision on July 12, 1993. 1 F.3d 473.

Dikeocha eluded arrest from 1990 until his apprehension in Chicago on October 16,

1

/5

1997. Dikeocha was tried before this Court and convicted on March 24, 1999 on all three counts. On March 25, 1999, the defendant moved for a judgment of acquittal, or, in the alternative, for a new trial. The defendant's post-trial motions were denied on April 23, 1999. R.322. On July 19, 1999, the defendant was sentenced to 188 months incarceration, 5 years supervised release, a fine of $2500, $2500 in community restitution and $150 in special assessments.

Dikeocha appealed his conviction and sentence. His conviction was affirmed on June 27, 2000. 218 F.3d 706.

## Habeas Corpus Standard of Review

Under 28 U.S.C. § 2255, federal prisoners can challenge the imposition or length of their detention if their conviction or sentence has been founded on an error that is "jurisdictional, constitutional, or is a fundamental defect which inherently results in a complete miscarriage of justice." Oliver v. United States, 961 F.2d 1339, 1341 (7th Cir.1995); 28 U.S.C. § 2255. If the court determines that any of these errors infected the judgment or sentence, the petitioner's conviction will be vacated or set aside, and the petitioner will be discharged, resentenced, or granted a new trial. Key v. U.S., 2002 WL 483418, *1 (N.D.Ill.).

## Analysis

I. Ineffective Assistance of Counsel

Ebenezer argues that her counsel was ineffective on the basis of several grounds.

To establish that counsel provided ineffective assistance, the petitioners must demonstrate: (1) that their attorney's performance was deficient; and (2) that such representation prejudiced his or her case. Precin v. United States, 23 F.3d 1215, 1218 (7th Cir.1994). The first prong is satisfied by a showing that counsel's performance fell below the "objective standard of

2

reasonableness" guaranteed under the Sixth Amendment. Barker v. United States, 7 F.3d 629, 633 (7th Cir.1993) (quoting Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). To satisfy the second prong, the petitioners must show that because of counsel's errors, the outcome of their trial or sentencing was fundamentally unreliable or unfair. Id. Because counsel is presumed to have been effective, the petitioners bears a heavy burden in proving that counsel was ineffective and that their defense was prejudiced. Id.

A.  Ground 1

Petitioner argues that his counsel was deficient in failing to move for a dismissal of the charges based on a violation of the states of limitations. Dikeocha's argument is frivolous.

The acts alleged in the indictment occurred between January of 1989 and September of 1990. The defendant was indicted on October 10, 1990, well within the five year period of limitations applicable under 18 U.S.C. § 3282. Moreover, the defendant raised his statute of limitations argument to this Court on several occasions before, during and after the trial. The motion has already been rejected by this Court. Defendant's counsel was not ineffective in failing to advance this meritless argument to the Court of Appeals.

B.  Ground 2

Dikeocha complains that his counsel was deficient in failing to object to the use of the transcript of Larry Palmer ("Palmer"), a witness who had testified in the 1991 trial of Dikeocha's co-defendants. Dikeocha's argument misstates the record.

Prior to trial, the government moved unsuccessfully to admit the prior trial testimony of Larry Palmer. In fact, Palmer's transcript was not used during the trial. The government, however, did rely on the transcript of Palmer's testimony. Dikeocha's attorney objected to any

3

reliance on Palmer's testimony as part of the sentencing process. After finding that Palmer's prior testimony contained sufficient indicia of reliability, this Court considered the testimony in determining relevant conduct. Dikeocha's attorney pursued this issue on appeal and the Seventh Circuit rejected his argument, affirming this Court. 218 F.3d at 711.

Consequently, there was no prejudice to Dikeocha during the trial since the government did not use Palmer's transcript. Further, with respect to the sentencing, Palmer's testimony was relied on by the Court, but Dikeocha's attorney contested that reliance both in this Court and on appeal. Given the ruling of the Court of Appeals that this Court's reliance was appropriate, Dikeocha's complaint against his attorney is without merit.

C. Ground 3

Dikeocha argues that his counsel failed to object to the use of the 1998 Sentencing Guidelines. Dikeocha claims that he was prejudiced by his attorney's failure because he would not have received a two-level enhancement for obstruction if the earlier edition of the Guidelines had been used. This court disagrees.

Dikeocha received a two-level increase in his base offense level under USSG § 3C1.1 for obstruction of justice. 3C1.1 provides, in pertinent part, that if a defendant "willfully obstructed or impeded, or attempted to obstruct or impede the administration of justice during the course of the investigation, prosecution, or sentencing," his offense level is increased by two levels. Application Note 3 gives a "nonexhaustive" list of examples of the types of conduct to which the adjustment applies, including "providing materially false information to a judge or magistrate." App. Note 3(f).

Dikeocha's whereabouts and activities during the period from 1990 until his 1997 arrest

4

were the subject of pretrial hearings held by Magistrate Judge Keys in connection with Dikeocha's motion to dismiss the indictment. In support of a Motion to Dismiss the indictment, Dikeocha filed a one-page affidavit following his arrest in 1997 in which he asserted that he had not been aware of his 1990 indictment until his arrest in 1997. Dikeocha also claimed in his affidavit that he had lived in Chicago from late 1990 until either late 1995 or early 1996. After evidentiary hearings on Dikeocha's motion, Magistrate Judge Keys found that Dikeocha had been aware of the arrest warrant for him beginning in 1990. Report and Recommendation, attached hereto as Exhibit 4, at 12. At the time of sentencing, this Court agreed with Magistrate Judge Keys' finding and, on that basis, increased the defendant's offense level by two levels for obstructing justice under USSG 3C1.1.

Dikeocha argues that his two-level enhancement for obstruction was based on an amendment to the Application Note to the Guidelines that did not become effective until November 1, 1990.

While it is true that Application Note 3(f) ("providing materially false information to a judge or magistrate") was not added to the Guidelines until November 1, 1990, it did not alter or expand the previous obstruction guideline. Rather, it was merely part of an illustrative (and non-exhaustive) list of the types of conduct that constitute obstruction. The underlying guideline (3 C1.1) did not change in any material way. Even prior to its amendment, the Application Notes had set forth a non- exhaustive list of obstructive conduct that included, "testifying untruthfully or suborning untruthful testimony concerning a material fact ... during a preliminary or grand jury proceeding .... or any other judicial proceeding." Thus, even had this Court applied the guideline and Application Notes prior to the November 1, 1990 amendment, the result would have been the

5

same: the defendant would have received the two-level enhancement.

Finally, Dikeocha's reliance on the Ex Post Facto Clause is misplaced. He mistakenly assumes that in receiving a two-level enhancement, he is being punished for conduct he committed in 1989 or 1990 and to do so, after the fact, is unconstitutional. Yet, in receiving the enhancement, Dikeocha was punished for conduct he committed long after the enactment of the amended Guidelines. Dikeocha submitted his perjurious affidavit to the Court in March of 1998 in connection with his effort to have the charges dismissed. At that time, the amended guideline had been in effect for over seven years and Dikeocha (and all other defendants) were on notice of the consequences of lying to a Court vis-a-vis the obstruction enhancement.

In this court's view, the application of the obstruction enhancement to Dikeocha was appropriate under either the earlier or later version of the Guidelines. There was no Ex Post Facto Clause violation in applying the enhancement and Dikeocha's attorney was not ineffective in failing to argue that the earlier guideline should have been used.

D.   Ground 4

Dikeocha argues that his statutory and Sixth Amendment right to a speedy trial were violated by the nineteen month pre-trial delay following his arraignment. He contends that both the government and his counsel delayed the proceedings in violation of his rights. This court diagrees.

First, the underlying premise of his argument - that his counsel failed to object to the alleged violation of the Speedy Trial Act is wrong. Following the trial, on March 25, 1999, Dikeocha's counsel filed a motion for a Judgment of Acquittal or a New Trial, in which he asserted that "[t]he court erred in granting the government's repeated motions to continue the

trial date and in excluding time under the Speedy Trial Act." That motion was denied by this Court on April 23, 1999.

Further, there are exceptions to the general rule that a trial commence within seventy days of arraignment. In particular, 18 U.S.C. § 3 161(h)(1)(F).

In the seventeen month period between his arraignment and the trial, Dikeocha had three different attorneys and filed a motion to dismiss the indictment for pre-arrest delay that required an evidentiary hearing by a Magistrate Judge. During this pre-trial period, Dikeocha filed a number of other motions including a motion to reopen his motion to dismiss the indictment. Thus, a large portion of the time excluded prior to trial was due either to motions filed by Dikeocha or to allow his successive counsel adequate time to prepare for the trial. While there was a period of time that was excluded due to the unavailability of an essential government witness, a portion of that time overlapped with exclusions due either to defense motions and/or continuity of defense counsel. Consequently, the petitioner's argument that the government is to "blame" for the pre-trial delay is therefore misguided.

Dikeocha also contends that his Sixth Amendment right to a speedy trial was violated. There are four factors in determining whether the Sixth Amendment right to a speedy trial has been violated: "(1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his speedy trial right, and (4) the prejudice to the defendant caused by the delay." United States v. Koller, 956 F.2d 1408, 1413 (7th Cir. 1992). It is "impossible to determine with precision when the right has been denied" and "none of the four factors [are regarded] . . . as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." Barker v. Wingo, 407 U.S. 514, 521, 533 (1972). See also United States v. Taylor, 196

7

F.3d 854, 86 1-62 (7th Cir. 1999)(560 day delay between arraignment and trial not violation of Sixth Amendment), cert. denied, 529 U.S. 1081 (2000); Koller, 956 F.2d at 1414 (eight and a half months); United States v. Infelise, 934 F. 2d 103,104 (7th Cir. 1991) (two year period of pretrial detention not per se unconstitutional).

The petitioner, however, does not satisfy the second and fourth requirements of the Barker analysis. The reasons for the delay, as discussed earlier, were in part due to motions filed by Dikeocha or the need to give his successive attorneys adequate time to prepare for trial. Consequently, Dikeocha is not entitled to relief for delay occasioned by his Sixth Amendment motions as well as his other motions.

Finally, Dikeocha does not provide evidence that that he sustained any prejudice by the seventeen month delay following his arraignment. The issue of prejudice usually concerns the following interests of the defendant: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." United States v. Jackson, 542 F.2d 403, 408 (7th Cir. 1976) (citing Barker, 407 U.S. at 532). The possibility that the defense will be impaired is the most serious of the three. Id. "With respect to the impairment to his defense, the defendant cannot merely allege possible prejudice, he must show that his defense was impaired such that he suffered actual and substantial prejudice as a result of the delay." Koller, 956 F.2d at 1414.

Dikeocha makes only conclusory assertions as to the prejudice he suffered by virtue of the delay in this case. He claims that the delay "interfered with [his] liberty, disrupted his employment and financial resources." He fails, however, to specify any aspect of his trial strategy or presentation that was adversely affected by the seventeen month delay.

The speedy trial analysis is a balancing test. Barker, 407 U.S. at 533. In Jackson, the court pointed out that "[a]lthough defendant's pretrial incarceration for approximately one year supports a presumption of prejudice, such prejudice 'unenhanced by tangible impairment of the defense function and unsupported by a better showing on the other factors than was made here, does not alone make out a deprivation of the right to [a] speedy trial.'" 542 F.2d at 409 (quoting United States v. DeTienne, 468 F.2d 151, 158 (7th Cir. 1972), cert. denied, 410 U.S. 911(1973)).

Under the balancing analysis of Barker, the pivotal factors here are that the pre-trial delay was due, in significant part, to Dikeocha and secondly, that he has identified no prejudice that he sustained as a result of the delay. Under these circumstances, in this Court's view there was no Sixth Amendment violation in the pre-trial delay in this case.

E. Ground 5

Dikeocha contends that, based on Apprendi v. New Jersey, 530 U.S. 466 (2000), this Court erred in making findings for purposes of sentencing regarding the quantity of drugs for which he was held accountable. He further contends that his counsel was ineffective for having failed to raise this argument at sentencing and on direct appeal. The Court lacks jurisdiction to entertain Dikeocha's arguments based on the Apprendi decision.

Dikeocha claims that the Supreme Court's decision in Apprendi provides grounds for his collateral attack to vacate or set aside his conviction and sentence. Apprendi, however, is not a "watershed" decision that is made applicable to collateral attacks. Under Teague v. Lane, 489 U.S. 288 (1989), a petitioner may only benefit from a "new rule" that was adopted after the petitioner's conviction became final for purposes of direct appeal if the new rule places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making

9

authority to proscribe [or] requires the observance of those procedures that are implicit in the concept of ordered liberty." Id. at 307 (citations and quotations omitted). A rule is a "new rule" unless "a... court considering the petitioner's claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule [he] seeks was required by the Constitution." Gray v. Netherland, 518 U.S. 152, 166 (1996)(quoting Saffle v. Parks, 494 U.S. 484, 488 (1990)).

Apprendi does not meet either of the two Teague exceptions that would allow application of the "new rule" to collateral attacks, and no appellate court has held that the "new rule" of Apprendi applies retroactively on collateral attack under Teague. See Garrott v. United States, 238 F.3d 903, 906 th Cir.), cert. denied, 121 S.Ct. 2230 (2001). See Talbott v. Indiana, 226 F.3d 866 (7th Cir. 2000); Hernandez v. United States, 226 F.3d 839, 841 (7th Cir. 2000); Jones v. Smith, 231 F.3d 1227, 1236 (9th Cir. 2000).

The first Teague exception does not apply in this instance since Dikeocha's illegal conduct is the type that may be proscribed by statute. Under the second Teague exception, the defendant must show that failure to apply Apprendi on collateral review will create an impermissible risk that innocent people will be convicted and will make trials fundamentally unfair. Teague, 489 U.S. at 312. Since failure to have a jury determine quantity of a drug implicates neither innocence nor fundamental fairness, Apprendi should not be applied on collateral review. See Smith, 231 F.3d at 123 6-37 (finding Apprendi did not meet Teague standard and would not be applied to petitioner's collateral attack of charging document and jury instructions); United States v. Goode, 143 F.Supp.2d 817, 823 (E.D. Mich. 2001)(Apprendi does not apply retroactively to cases on collateral review - collecting cases); United States v. Gibbs

10

125 F. Supp.2d 700, 707 (E.D. Pa. 2000); but see Darity v. United States, 124 F. Supp. 2d 355, 359 (W.D.N.C.2000)(announcing that Apprendi is both a "new rule" and "a substantive decision")

Additionally, in In Re Lamberty. United States, 2001 WL 686814, *3 (N.D. Ill. June 15, 2001) (Kocoras, J), a district court case in the Northern District of Illinois squarely addressed this issue. In Lamberty the defendant contended in his § 2255 petition that he was injured because the questions of quantity and type of drug were not submitted to the jury, based on the decision in Apprendi. The district court judge, in refusing to apply Apprendi to the defendant's § 2255 petition, noted that

> every indication from higher courts establishes that Apprendi does not apply retroactively to cases on collateral review. Until the United States Supreme Court rules on the question, the Seventh circuit has declined to deem Apprendi to apply retroactively.

Id. Accord Collins v. United States, 2001 WL 699058, * 1 (D. Kan. June 11, 2001).

Accordingly, since the Apprendi decision is not retroactively applicable to cases on collateral review, Dikeocha's petition at Ground Five is dismissed for lack of jurisdiction.

F.     Ground 6

Dikeocha argues that his counsel was ineffective in failing to object to the late fingerprinting of evidence and in failing to argue that the late fingerprinting demonstrated that the prosecution had "reasonable doubt" about the defendant's guilt. Dikeocha's argument is frivolous. The petitioner's argument is frivolous.

In the Dikeocha's case, his attorney read two stipulations regarding fingerprint evidence. The first stipulation referenced a 1990 fingerprint examination of various items of physical evidence on which the fingerprint examiner found one latent fingerprint, which did not match the

11

fingerprints of Dikeocha or any of his known co-conspirators. The second stipulation referenced a 1998 fingerprint examination of the plastic wrappings of the narcotics in which no latent fingerprints were found.

Dikeocha contends that his attorney did not object to the "late" fingerprinting of the drug evidence and that his attorney did not argue that the "late" fingerprinting demonstrated the prosecution's reasonable doubt about Dikeocha's guilt.

The government, however, had the right to conduct a fingerprint comparison whenever it chose, as long as Dikeocha was given sufficient notice of the results. Dikeocha does not contend that he received inadequate notice of the fingerprint evidence or that it took him by surprise. In addition, Dikeocha's attorney was the one who read the stipulation to the jury because it was, at least, arguably consistent with Dikeocha's defense.

Dikeocha, however, wanted his attorney to go further and to argue that the 1998 fingerprint examination showed that the prosecutors had reasonable doubts about Dikeocha's guilt. Such an argument would, of course, have been improper, since it would have brought into issue the personal beliefs of the attorneys. The government raised the issue before closing arguments and the Court agreed that it would be inappropriate for Dikeocha's attorney to argue that the government had doubts about its case. Dickeocha's attorney agreed that he was not going to make that sort of argument.

Dikeocha can not contest his attorney's failure to make an argument that was deemed improper by this Court.

G. Ground 7

Dikeocha argues that he faces deportation and other collateral consequences as a result of

12

his attorney's ineffective assistance. Dikeocha's complaint is frivolous.

Dikeocha's attorney was responsible for providing an effective defense to the criminal charges. The possible collateral consequences of a conviction were not an issue in the case nor was there anything that Dikeocha's criminal attorney should or could have been expected to do in the context of the criminal prosecution to ward off possible collateral consequences. Assuming, as the record reflects, that Dikeocha received competent counsel in his criminal trial, whatever collateral consequences may arise from his conviction are a subject for some other forum and possibly some other attorney. Dikeocha's criminal attorney is not accountable or responsible for any such collateral consequences.

## Conclusion

For the foregoing reasons petitioner's motion for writ of habeas corpus is denied.

Enter:

David H. Coar

United States District Judge

Dated: September 3, 2002